# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Dorothy Linda New,

                Plaintiff,

                                Case No. 1:18-cv-2529-MLB

v.

Kohl's Department Stores, Inc.,

                Defendant.

_____/

## **OPINION & ORDER**

Defendant Kohl's Department Stores, Inc. ("Kohl's") moves for summary judgment on Plaintiff Dorothy Linda New's claims for damages related to a trip-and-fall at one of its stores.[1] (Dkt. 81.) The Court grants that motion in part and denies it in part.

---

[1] The Court acknowledges that Defendant states "Plaintiff's *claims* fail as a matter of law." (Dkts. 81 at 1; 81-2 at 1 (emphasis added).) Plaintiff asserts claims for negligence *and* premises liability. (Dkt. 1-1 at 5–7.) But Defendant only addresses Plaintiff's claim for premises liability. Because it does not appear that Defendant addresses Plaintiff's claim for negligence, except in relation to her claim for premises liability, the Court denies Defendant's motion for summary judgment as to Plaintiff's claim for negligence. If Defendant believes it addressed Plaintiff's claim for negligence, it should inform the Court.

I. **Background**[2]

On February 21, 2017, Plaintiff was shopping at the Kohl's store in Acworth, Georgia when she fell. (Dkt. 1-1 ¶¶ 2, 7.) She says she was using a shopping cart that had a canvas (not mesh) bag with a black jig-jag/zig-zag design on it. (Dkt. 38 at 32:25–36:1, 39:1–5.) It was different from all the other shopping carts at the store. (*Id.*) Plaintiff had no problems or issues with the cart she was using at first. (*Id.* at 37:5–18; 51:1–4.) After shopping for five to seven minutes and placing some slippers into the canvas bag, she took an orange candle from a display shelf and began placing it in the cart. (*Id.* at 51:17–25, 52:1–3, 52:13–15, 53:1–24.) She realized that, if she dropped the candle in the canvas bag, the candle would hit the floor. (*Id.*) She thus returned the candle to the display rack. (*Id.*)

Plaintiff stood on the right side of the cart. (*Id.* at 57:12–58:24.) Rather than walking around the cart to get to the handle, she reached across the cart and tried to spin it around. (*Id.* at 59:7–61:23, 62:3–13.) She placed her left hand on the center of the handle (which is on the back

---

[2] The page numbers on deposition transcripts do not match the page numbers applied by the CM/ECF system. The Court cites to the CM/ECF page numbers for the transcripts.

of the cart) and her right hand on the side of the cart. (*Id.*) When Plaintiff placed her right hand on the right side of the frame to turn the cart around, she fell. (*Id.* at 67:14–68:25.) Plaintiff does not recall if either of her feet were under the cart before she fell. (*Id.* at 68:15–23.) She explained that she "put [her] left hand on the handle and . . . put [her] right hand on the side of the buggy. And within two seconds something happened to the right side of that buggy. And all [she] could think was 'oh, no' and [she] went down . . . it was a two second thing." (*Id.* at 52:7–11.) She testified that she believes something on the frame of the cart broke as she placed force on it with her right hand. She said she knows something "gave under the fabric" bag. (*Id.* at 70:8–10.) "[E]ither a joint or it was already broken and [she] couldn't tell . . . . [She doesn't] know what it was, but something gave because . . . the buggy gave." (*Id.* at 70:13–20.) She reiterated that she believes the cart broke because she "felt [the frame] move in [her] hand." (*Id.*)

Christina Logan was the first Kohl's associate to arrive at the scene. (Dkt. 81-4 ¶ 4.) When she saw Plaintiff on the ground, she called for the manager on duty, Chan Miller-Scelsa, who came to the scene and (later) completed an incident report. (*Id.*; Dkt. 81-5 at 15:1–13.) Patricia

Donaldson also came to the scene shortly thereafter.  (Dkt. 81-6 ¶ 5.)  Ms. Donaldson took a photograph of the cart that Mr. Miller-Scelsa said Plaintiff had been using before she fell.  (*Id.*; Dkt. 81-5 at 13:8–14:18.) Ms. Donaldson inspected the cart, confirmed nothing was broken, damaged, or out of place, and placed it back in circulation with other Kohl's carts.  (Dkt. 81-6 ¶ 6.)  As explained below, the cart Ms. Donaldson photographed, inspected, and placed back into circulation was the standard black Kohl's shopping cart and looked nothing like the cart Plaintiff described.  (Dkts. 38 at 107:11–18; 81-8 at 5.)

The sole provider of shopping carts to Kohl's between 2001 and 2004 was All Tool Manufacturing ("All Tool").  (Dkt. 81-8 ¶ 3.)  Gary Ebling was in charge of the Kohl's account for All Tool.  (*Id.*)  Mr. Ebling is now the owner and Chief Executive Officer of Retail Design Services ("RDS"). (*Id.* ¶ 2.)  RDS has been the sole provider of carts to Kohl's since 2004. (*Id.*)

## II.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *W. Grp. Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 1361 (citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The nonmoving party then has the burden of showing that summary judgment is improper by coming forward with "specific facts" showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)). Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.

Throughout its analysis, the Court must "resolve all reasonable doubts about the facts in favor of the non-movant[] and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)). "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

## III.  Discussion

"To recover on a theory of premises liability, a plaintiff must show injury caused by a hazard on an owner or occupier of land's premises or approaches that the owner or occupier should have removed in the exercise of ordinary care for the safety of the invited public." *Am. Multi-Cinema, Inc. v. Brown*, 679 S.E.2d 25, 27 (Ga. 2009).  When a premises liability cause of action is based on a "trip and fall" claim, this test is refined to two specific elements. *Id.* at 27–28.  The plaintiff must "prove

that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control."[3] *Id.* at 28.

### A.    Hazardous Condition and Knowledge

"Whether a hazardous condition exists is the threshold question in a slip and fall case." *Drew v. Istar Fin., Inc.*, 661 S.E.2d 686, 689 (Ga. Ct. App. 2008). "Under Georgia law, a 'hazard is defined as a danger or risk lurking in a situation which by chance or fortuity develops into an active agency of harm.' " *Carter v. Wal-Mart Stores E., L.P.*, No. 1:13-CV-1467, 2014 WL 11930619, at *2 (N.D. Ga. June 26, 2014) (quoting *Gresham v. Bell's Food Mkt., Inc.*, 534 S.E.2d 537, 537 (Ga. Ct. App. 2000)). But "[m]erely stating that a condition is dangerous does not constitute evidence it is so." *Ford v. Bank of Am. Corp.*, 627 S.E.2d 376, 378 (Ga. Ct. App. 2006). "And although [a plaintiff] suffer[s] an unfortunate injury, the occurrence of her injury, without more, does not itself show

---

[3] "The true ground of liability is the owner or occupier's superior knowledge of the hazard and the danger therefrom." *McCoy v. W. Bldg. Materials of Ga., Inc.*, 502 S.E.2d 559, 561 (Ga. Ct. App. 1998).

7

the existence of a hazardous condition or instrumentality." *Aubain-Gray v. Hobby Lobby Stores, Inc.*, 747 S.E.2d 684, 686 (Ga. Ct. App. 2013).  In other words, "[p]roof of a fall, without more, does not create liability on the part of a proprietor or landowner[, because] [i]t is common knowledge that people fall on the best of sidewalks and floors." *Flagstar Enters. v. Burch*, 600 S.E.2d 834, 835 (Ga. Ct. App. 2004) (internal citation and quotation marks omitted); *see also Henson v. Ga.-Pac. Corp.*, 658 S.E.2d 391, 394 (Ga. Ct. App. 2008) ("It is not sufficient to simply show that an unfortunate event occurred and the plaintiff was injured."); *Dixon v. Infinity Broad. E.*, 656 S.E.2d 211, 213 (Ga. Ct. App. 2007) ("The mere showing of the occurrence of an injury does not create a presumption of negligence.").  "The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm." *Christensen v. Overseas Partners Cap.*, 549 S.E.2d 784, 785–86 (Ga. Ct. App. 2001) (citations, punctuation, and footnote omitted).

"Where the plaintiff cannot show the existence of a hazardous condition, she cannot prove the cause of her injuries and there can be no recovery because an essential element of negligence cannot be proven."

*Glynn-Brunswick Mem. Hosp. Auth. v. Benton*, 693 S.E.2d 566, 307 (Ga. Ct. App. 2010) (internal quotation marks omitted).  To create a question of fact as to the existence of a hazardous condition, a "plaintiff cannot rely upon speculation."  *Flagstar Enters.*, 600 S.E.2d at 836.  "Guesses or speculation which raise merely a conjecture or possibility [of a hazardous condition] are not sufficient to create even an inference of fact for consideration on summary judgment."  *Brown v. Amerson*, 469 S.E.2d 723, 725 (Ga. Ct. App. 1996) (citation omitted).

Plaintiff claims the cart she was using created a hazardous condition.  (Dkt. 89 at 2.)  Of course, there is a dispute over which cart Plaintiff was actually using when she fell.   Plaintiff's deposition testimony suggests she was not using a Kohl's cart.  She testified her cart was a "mostly" beige cart with a canvas bag and a black jig-jag/zig-zag design, whereas Kohl's carts are almost entirely black, include a mesh bag, and have the name "Kohl's" in white lettering.  (*Compare* Dkt. 38 at 31:2–32:8, 38:1–15 *with* Dkts. 81-1 ¶¶ 41, 53–55; 81-6 at 7.)

Defendant says the evidence shows Plaintiff was likely using one of their standard carts, specifically the cart Ms. Donaldson photographed. Defendant notes that, during her deposition, Plaintiff testified that she

picked out a pair of bedroom slippers and put them in the cart. (Dkt. 38 at 44–45.) She also testified that she took an orange candle from a display but realized she could not put it in the cart, so she put it back on the display. (*Id.* at 51.) The cart Ms. Donaldson photographed (which Mr. Miller-Scelsa said Plaintiff had been using before she fell) contained bedroom slippers and a candle. (Dkts. 81-6 at 3–4, 7; 81-5 at 13:8–14:18.) They are visible in the photograph. (Dkt. 81-6 at 7.) But, when Plaintiff saw the photograph during her deposition, she testified that was not the cart she had been using, was nothing like the cart she was using at the time of the incident, was not even close to the cart she was using at the time of the incident, and the slippers in the cart in the photograph were not the slippers she put in the cart she was using. (Dkt. 38 at 106–07.) She also noted that her cart was smaller than the black mesh cart depicted in Ms. Donaldson's photograph. (Dkts. 38 at 108:6–8; 81-6 ¶¶ 4,7; 81-4 ¶ 8; 81-7 ¶¶ 3, 4; 81-8 ¶¶ 4, 5.) Plaintiff testified that she grabbed the cart from the front of the store. (Dkt. 38 at 31:4–12, 32:2–7.)

From Plaintiff's testimony, a jury could conclude there was a non-Kohl's cart in the store and that she grabbed it when she began shopping. On the other hand, a jury could also conclude she was

mistaken and was using the standard Kohl's cart. Plaintiff is not so clear anymore as to what she says happened. Her opposition to summary judgment seems to move away from her definitive deposition statements by arguing throughout her brief that she was using the typical Kohl's "single bag cart" and that "the Kohl's single bag cart . . . caused her to fall." (Dkt. 89 at 3.) She refers to it as the "Kohl's shopping cart" throughout her response to summary judgment, discusses Kohl's efforts to design its standard cart, argues Kohl's involvement in that design provided it knowledge of a hazard that caused Plaintiff's fall, and refers to Kohl's single-bag cart as unique in the industry. (*Id.* at 6, 7, 12.) Plaintiff clearly took the position at summary judgment (at least in part) that—despite her deposition testimony—she was using a standard Kohl's cart at the time she fell.[4] She even referred to the differences between the cart she described and the standard Kohl's cart as only "cosmetic." (*Id.* at 24.) Whether Plaintiff completely abandoned her claim that she was using a non-Kohl's cart that someone put at the front of the store is

---

[4] At another point in her briefing, Plaintiff says she was using a cart "supplied by Kohl's for customer use," (Dkt. 89 at 3), which may have been an attempt to hedge away from saying whether she believes she was using a non-Kohl's cart left in the Kohl's store or a Kohl's standard cart.

unclear.   (Dkt. 90 ¶¶ 39–41 (noting Plaintiff described using a cart different from the standard Kohl's cart).)

That Plaintiff seems to hedge on the key issue of whether she was using a Kohl's cart or a non-Kohl's cart that was in the store makes assessment of summary judgment more difficult.  Having considered both possibilities, the Court grants in part and denies in part Defendant's motion for summary judgment.  While there is a dispute as to Defendant's constructive knowledge of some break in the non-Kohl's cart, a reasonable jury could not hold Defendant liable on Plaintiff's argument about the Kohl's single-bag cart.

### 1.    The Non-Kohl's Cart

As explained above, Plaintiff has presented testimony (mostly her own deposition) from which a jury could conclude she was using a non-Kohl's cart.  She has also presented evidence from which a jury could conclude such a cart had a broken frame—that is, a hazardous condition—and that the break caused Plaintiff to fall.[5]   Again, she

---

[5] The Court believes Plaintiff *may* have abandoned her claim that she was injured while using a non-Kohl's cart that had some physical damage.  In Plaintiff's response to Defendant's motion for summary judgment, she contends that she has

provided this evidence in her deposition testimony, testifying that something in the frame broke (or was already broken) when she placed her right hand on the frame and that the downward flex caused her to fall.  (*Id.* at 70–71.)[6]  To make it to a jury, however, Plaintiff must also present evidence from which a jury could conclude Kohl's was aware of

---

clarified on multiple occasions that her references to a 'joint' that 'gave way' or 'broke' were simply her effort to characterize the sensation she felt of the top edge of the cart giving way when 'it went down' under pressure from her right hand, since she could not actually see what was under her hand inside the fabric pocket that covered the metal rim hanger for the merchandise bag.

(Dkt. 89 at 6.)  Plaintiff's failure to address the argument about a broken non-Kohl's cart may constitute a waiver of that argument.  *See Files v. DeKalb Cnty. Sch. Dist.*, No. 1:11-cv-1798, 2012 WL 716055, at *5 (N.D. Ga. Mar. 5, 2012) (holding that the failure to respond to arguments on a particular claim constitutes abandonment of that claim); *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party.")  Because the Court cannot determine whether Plaintiff abandoned this argument, the Court will err on the side of caution and evaluate it.

[6] Defendant argues that there is no evidence of a defect with the beige non-Kohl's cart because Kohl's has never had any such cart in its stores. (Dkt. 104 at 5; *see generally* Dkt. 38.)  But that ignores Plaintiff's testimony that (1) she was using a beige cart that she found at the front of the store and (2) the cart had some problem on the frame that caused her to fall.  Defendant also argues that nothing is known about the beige cart, but that is the cart Plaintiff discussed during her deposition.  (*See generally* Dkt. 38.)

such problem with a non-Kohl's cart. *See Yasinsac v. Colonial Oil Props.*, 541 S.E.2d 109, 110 (Ga. Ct. App. 2000) (finding that a plaintiff must show that the defendant had actual or constructive knowledge of a *hazard* to survive summary judgment). Plaintiff can satisfy this burden by presenting evidence of Kohl's actual or constructive knowledge. *Id.*; *see also Carter*, 2014 WL 11930619, at *4 ("Even assuming a plaintiff did not know of a hazard, a defendant is still entitled to summary judgment if the plaintiff cannot also demonstrate that the defendant had actual or constructive knowledge of the hazard." (internal quotation omitted)).

Actual knowledge is defined as "[d]irect and clear knowledge." Knowledge, *Black's Law Dictionary* (11th ed. 2019). Plaintiff provides no evidence Defendant had actual knowledge of a non-Kohl's cart, let alone some hazardous condition with such a cart.

Constructive knowledge is "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Id.*

> Constructive knowledge of a hazard may be established by "showing that an employee of the defendant was present in the immediate area and could easily have seen the [hazard] and removed it[,]" or by showing that the hazard was on the premises "for such a time that it would have been discovered

14

and removed had the proprietor exercised reasonable care in inspecting the premises."

*Escobar v. Meadows & Ohly, LLC*, 819 S.E.2d 301, 303 (Ga. Ct. App. 2018) (quoting *Roberson v. Winn-Dixie Atlanta, Inc.*, 544 S.E.2d 494, 495 (Ga. Ct. App. 2001)).

Plaintiff presented no evidence any Kohl's employee was in the vicinity of the non-Kohl's cart. Indeed, she does not dispute Defendant's evidence that no Kohl's employee was aware of a non-Kohl's cart in the store. Moreover, Plaintiff testified that the alleged hazardous condition on the non-Kohl's cart (that is, some break in the frame) was covered up by the canvas bag, meaning it was not visible. Indeed, Plaintiff was not even aware of the condition while using the cart for five to seven minutes before placing her hand on the right side of the frame and attempting to turn the cart. Plaintiff has thus presented no evidence from which a jury could conclude that a Kohl's employee "was present in the immediate area and could easily have seen the [hazard] and removed it." *Id.* She cannot move forward under the first method of establishing constructive knowledge.

The second method requires Plaintiff to present evidence the "hazard was on the premises for such a time that it would have been

discovered and removed had the proprietor exercised reasonable care in inspecting the premises." *Id.* (internal quotation marks omitted).  Under this method, constructive knowledge may be inferred from evidence an owner lacked a "reasonable inspection procedure." *Shepard v. Winn Dixie Stores, Inc.*, 527 S.E.2d 36, 38 (Ga. Ct. App. 1999).   Nevertheless, under Georgia law, "[i]t is well settled that a proprietor is under no duty to patrol the premises continuously in the absence of facts showing that the premises are unusually dangerous."  *Mazur v. Food Giant, Inc.*, 359 S.E.2d 178, 179 (Ga. Ct. App. 1987).

"To survive summary judgment under the second method of proving constructive knowledge, a plaintiff must prove the period of time that the hazardous condition existed." *Brown v. Publix Super Mkts., Inc.*, 626 F. App'x 793, 796 (11th Cir. 2015).  "Without such (proof) it would not be possible to determine whether the defendant had been afforded a reasonable time within which to inspect and remove the hazard." *Ginn v. Grothere*, 469 S.E.2d 876, 878 (Ga. Ct. App. 1996) (internal quotation marks omitted).   In other words, the length of time the hazardous condition existed sheds some light on whether the owner's inspection procedure was "reasonable."  But a plaintiff is ***not*** required to show how

long the hazard existed unless the owner first shows that it had inspection procedures in place at the time of the accident and followed those procedures. *Shepard*, 527 S.E.2d at 38. Only then can someone (typically a jury) determine whether the owner of the location should have discovered the hazard through the use of ordinary diligence. So, to prevail at summary judgment based on lack of constructive knowledge, "the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." *Id.* (reversing summary judgment for premises owner when owner failed to present evidence employees followed inspection procedures on day of slip-and-fall incident).

Plaintiff has presented no evidence as to how long the allegedly hazardous, non-Kohl's cart was in the store. Plaintiff testified that, when she walked into the store, it was sitting near the black Kohl's carts and she just grabbed it. (Dkt. 38 at 31:4–32:19.) But Defendant also presented no evidence that it carried out a reasonable inspection program on the day of the injury. Ms. Donaldson testified that all of the carts at the Acworth store are inspected every time an associate touches the cart as they are looking inside the cart, moving the cart, and making sure it

is in good working order. (Dkt. 91-1 at 52–53, 89–90, 109–10.) She explained that Kohl's associates and managers are looking at the carts all day long and managers are reaching in to obtain merchandise, trash, and debris. (*Id.* at 89.) "All associates are responsible for inspecting the carts . . . every time [they] touch [them]." (*Id.* at 52.) Although there is no formal cart-specific training, there is a culture to make sure carts are in good repair every time they are touched by an employee. (*Id.* at 53.) She testified that "there is a natural culture." (*Id.* at 90.) There are no documents of inspections, but because customers leave carts throughout the store, employees touch and look at carts all the time. (*Id.*) Ms. Donaldson's testimony shows Defendant had reasonable inspection procedures. Defendant, however, has presented no evidence to suggest inspections were carried out on the day of the incident. This was the same flaw at issue in *Shepard.* Following that case, the Court concludes Plaintiff has raised an issue of material fact as to Defendant's constructive knowledge of some break in the non-Kohl's cart. The Court thus denies Defendant's motion for summary judgment as to Plaintiff's arguments based on a non-Kohl's cart.

### 2.    The Kohl's Cart

As explained above, Plaintiff also argues in response to summary judgment that the Kohl's cart Defendant claims she was using created a hazardous condition, specifically downward flexibility or deflection in the frame.  (Dkt. 89 at 8.)  She argues this deflection caused her to fall.[7] Plaintiff has not, however, presented evidence from which a jury could conclude Defendant had actual or constructive knowledge of any hazard in the Kohl's cart from downward flexibility in the frame.[8]  Plaintiff contends that Defendant had superior knowledge for four reasons: (1) Kohl's participated in the design of the single bag cart; (2) Kohl's had

---

[7] Plaintiff does not claim the Kohl's cart had a broken frame.  She made that allegation in her deposition in regard to the non-Kohl's cart.  At summary judgment while discussing the Kohl's cart, she says her reference to a joint breaking was simply her attempt to characterize the sensation she felt when the cart moved downward unexpectedly.  (Dkts. 38 at 70–71; 89 at 6.)  Ms. Donaldson inspected the Kohl's cart she believed Plaintiff was using and confirmed nothing was broken, damaged, or otherwise out of place.  (Dkt. 81-6 ¶ 6.)  Defendant provided no evidence to the contrary.  The Court thus only considers her claim that the Kohl's cart posed a hazardous condition because of inherent flexibility in its frame.

[8] The alleged flexibility in the cart was not a temporary hazardous condition that could have been seen by employees in the area or discovered with ordinary diligence.  If it existed, it was inherent to the design and not visible to the eye.  As a result, the Court does not apply the test for constructive knowledge set forth in *Escobar*.

knowledge of prior incidents in which customers fell because of instability in single bag carts when leaned upon; (3) Kohl's had superior knowledge to Plaintiff of the condition of all carts in the store; and (4) Kohl's was using a different cart design for several years that contained a warning not to use it as a walking aid.  (Dkt. 89 at 12–17.)

First, Plaintiff contends Defendant performed design work on the single bag cart, setting the original design parameters that made the cart what it is today.  (*Id.* at 12.)  She argues Defendant's participation in this iterative design process demonstrates it had knowledge of the design and fabrication characteristics of the cart.  (*Id.* at 14.)  Plaintiff uses Mr. Ebling's testimony that the design process was "probably a collaborative event" to support her contention.[9]  (Dkt. 94-1 at 55.)  Plaintiff, however, misses a step.  Dialogue between RDS and Defendant does not mean Defendant knew or should have known about the cart's downward

---

[9] Plaintiff makes other generalized statements to support her argument that Defendant performed design work, but she either cites no evidence or mischaracterizes the evidence she cites.

flexibility or any defect.[10]  Plaintiff provides no information to close this gap.

Second, Plaintiff argues Defendant had knowledge of prior incidents in which customers fell because of instability in the carts when leaned upon.  (Dkt. 89 at 16.)  Between October 2009 and December 2016, there were eighteen incidents reported to Kohl's.  (*Id.*)  These customers reported they fell when using the Kohl's single bag carts.  (Dkt. 69 at 6–7.)  Only one description included any indication that the cart "went down."  (*Id.* at 7.)  The Eleventh Circuit has instructed that evidence of prior incidents is admissible "so long as the conditions of the prior incidents are substantially similar to the occurrence in question and are not too remote in time."  *Wyatt v. Otis Elevator Co.*, 921 F.2d 1224, 1227 (11th Cir. 1991).  This evidentiary doctrine applies when one party seeks to admit prior accidents or occurrences involving the opposing party, in order to show, for example, "notice, magnitude of the danger involved, the [party's] ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation."

---

[10] Even if there was back and forth conversation, Mr. Ebling testified that he did not recall exchanges about size of tubing, plastic versus metal, or similar topics.  (Dkt. 94-1 at 55.)

*Jones v. Otis Elevator Co.*, 861 F.2d 655, 661 (11th Cir. 1988). "[T]he proponent of such evidence must show that 'conditions substantially similar to the occurrence caused the prior accidents.' " *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 n.12 (11th Cir. 1997) (quoting *Hessen v. Jaguar Cars*, 915 F.2d 641, 649 (11th Cir. 1990)). Plaintiff asserts all of the prior incidents are substantially similar because someone leaned on the cart, but only one incident description states the cart went down.[11] There is no evidence showing any of the other incidents involved a customer falling because of deflection.

Third, Plaintiff contends that taking Mr. Ebling's and Ms. Donaldson's testimony together, the evidence supports an inference that the specific cart Plaintiff was using when she fell had been through multiple cart counts and safety inspections over seven years. (Dkt. 89 at 15.) Ms. Donaldson testified that the carts are inspected every time an associate touches the cart. (Dkt. 91-1 at 52–53, 109–10.) Mr. Ebling testified that Defendant replaced all the single bag carts at the Acworth store in 2010. (Dkt. 94-1 at 107–08.) Plaintiff contends that the sheer

---

[11] The Court notes that even that incident description does not suggest the customer fell because of deflection while turning or pushing a cart in a different direction.

passage of time and frequency of employee inspections of the store's carts gives rise to an inference Defendant had actual or constructive knowledge of the flexibility of the rim of the cart. (Dkt. 89 at 15.)  Plaintiff points to no evidence Defendant had actual knowledge of the hazard. Regardless of the passage of time or frequency of inspections, there is no indication Defendant knew of the cart's downward flexibility.  Plaintiff also has not shown that the mere passage of time and inspection procedure is enough to establish constructive knowledge.   Between October 2009 and December 2016, there was only one similar incident with a single bag cart.  The Court notes that the only indication it was even similar is because the incident description states "it went down." (Dkt. 69 at 7.)  That, of course, does not mean it involved flexibility in the frame as alleged here. And, even if it did, one incident over eight years does not establish constructive knowledge.[12]  Indeed, it seems to indicate the opposite.  It can be inferred from the absence of similar incidents that there was no constructive knowledge.

---

[12] The Court notes that this rate of incident seems to indicate the downward flexibility may not even be a hazard.

Fourth, Plaintiff argues Defendant had knowledge that putting weight on its carts is dangerous because it had a warning on a different, more stable cart model that stated not to use it as a walking aid. (Dkt. 89 at 17.) She contends that the presence of this warning is evidence from which a jury could infer Defendant was aware of the danger of injury to a user who leans on its carts. (*Id.* at 19.) She claims Defendant knew of the danger of an alternative use of shopping carts as a walking aid, which is why it was required to give adequate warning of the danger. (*Id.* (quoting *Hunter v. Werner Co.*, 574 S.E.2d 426, 432 (Ga. Ct. App. 2002)).) Plaintiff, however, never argued that she was using the cart as a walking aid. She suggests this warning is the same as a warning to not put weight on or lean on the cart, but there is nothing to support these statements. Plaintiff was turning the cart when she fell. There is no indication she would not have fallen while turning any other cart.

For the foregoing reasons, the Court concludes there is no evidence from which a jury could reasonably conclude Defendant had actual or constructive knowledge that its cart's downward flexibility was a hazard. Since Plaintiff bears the burden of coming forward with specific evidence to show there is a genuine dispute of material fact as to Defendant's

knowledge of the alleged hazard being superior to hers and she has failed to do so, Defendant is entitled to summary judgment as to Plaintiff's argument about a Kohl's cart being a hazard. *See Sams v. Wal-Mart Stores, Inc.*, 491 S.E.2d 517, 519 (Ga. Ct. App. 1997); *Green v. Home Depot U.S.A., Inc.*, 627 S.E.2d 836, 838 (Ga. Ct. App. 2006).

### B. Spoliation

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (internal quotations and citation omitted). As an evidentiary matter, the imposition of spoliation sanctions is governed by federal law in diversity suits. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Federal law in the Eleventh Circuit, however, does not set forth specific guidelines in determining whether sanctions for spoliation are appropriate. *Id.* As a result, the spoliation analysis is "informed by Georgia law," which the Eleventh Circuit has found to be "wholly consistent with federal spoliation principles." *Id.*

A party seeking to impose sanctions for spoliation must show: (1) the missing evidence existed at one time; (2) the opposing party had a duty to preserve the evidence; and (3) the evidence was crucial or necessary to the litigation. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011). If spoliation has occurred, Georgia courts further evaluate the following five factors in determining whether spoliation sanctions are warranted: (1) whether the movant was prejudiced as a result of the destruction of evidence; (2) whether any prejudice can be cured; (3) the importance of the evidence; (4) whether the spoliator acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence is not excluded. *Flury*, 427 F.3d at 945 (citing *Chapman v. Auto Owners Ins. Co.*, 469 S.E.2d 783, 784 (Ga. Ct. App. 1996)). The Eleventh Circuit has held that a showing of bad faith is required to impose sanctions. *See, e.g.*, *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) ("[A]n adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith."); *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) ("[T]he party's reason for destroying evidence is what justifies sanctions (or a lack thereof).").

As sanctions for spoliation, the court may impose any of the following: (1) dismissal of the action, (2) exclusion of testimony, or (3) a jury instruction on spoliation evidence that raises a presumption that the evidence was non-favorable to the spoliator. *Flury*, 427 F.3d at 944. The court may also award fees and costs incurred by the injured party as a result of the spoliation. *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009) (citing *Flury*, 427 F.3d at 945). When spoliation has occurred, the district court has wide discretion to impose sanctions. *Flury*, 427 F.3d at 944.

Plaintiff moved for spoliation sanctions on the grounds Defendant did not preserve the specific cart Plaintiff was using when she fell and destroyed the video surveillance footage. (Dkt. 93 at 23.) Plaintiff has not met her burden of showing spoliation occurred, so the Court denies Plaintiff's request for sanctions.[13]

### 1.   Shopping Cart

Plaintiff argues that Defendant failed to preserve the cart "even though it was immediately clear she had been injured and the cart was

---

[13] The Court notes that Plaintiff makes no attempt to address the issue of bad faith.

still nearby to identify and segregate." (*Id.*) "An injury 'without more, is not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation.' " *Canales v. Pilot Travel Ctrs., LLC*, No. 7:19-CV-100, 2020 WL 8093583, at *10 (M.D. Ga. Nov. 30, 2020) (quoting *Aubain-Gray*, 747 S.E.2d. at 687). Defendant contends that it had no duty to preserve the cart because it took a photo of the cart, inspected it right after the incident, and then placed it back in circulation as it was found to be in perfect working order. (Dkt. 104 at 14.) Defendant did not have notice of Plaintiff's pending litigation until her attorney sent a preservation letter seventeen days after Plaintiff's fall. (Dkt. 93-1.) This was seventeen days after Defendant had placed the cart back in circulation. Plaintiff does not provide any evidence or argument that shows Defendant received express notice of actual litigation before her attorney's letter.

### 2.   Surveillance Video

Plaintiff is also seeking spoliation sanctions for destruction of Defendant's surveillance video footage. (Dkt. 93 at 23.) Defendant contends, and Plaintiff does not disagree, that the area where the incident occurred is not captured by video. (Dkt. 95-1 at 60:13–16, 68:21–

69:7.)  Plaintiff argues that "[e]ven camera angles away from the area of the fall *could have* captured Ms. New using a shopping cart." (Dkt. 93 at 23–24 (emphasis added).)  Plaintiff, however, only speculates that, before her lawyer sent the letter, there may have been video of herself in other areas of the store.  "Simply put, there is no evidence whatsoever of any additional footage that existed, and Plaintiff's speculation is insufficient to establish a spoliation claim." *Wright v. Wal-Mart Stores E., L.P.*, No. 1:18-CV-1006, 2021 WL 86836, at *7 (N.D. Ga. Jan. 11, 2021) (citing *In re Delta/AirTran*, 770 F. Supp. 2d at 1309).

## IV.  Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Amended Motion for Summary Judgment (Dkt. 81).  The Court **GRANTS** the motion as to Plaintiff's arguments about a Kohl's cart but **DENIES** the motion as to Plaintiff's argument about a non-Kohl's cart and Plaintiff's claim for negligence.

**SO ORDERED** this 30th day of March, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE